# IN THE COURT OF APPEALS OF IOWA

―――――――――

No. 25-1852
Filed March 11, 2026

―――――――――

**In the Interest of C.L., E.L., J.L., B.L., and S.L., Minor Children,**

**L.L., Father,**
Appellant,

**K.E., Mother,**
Appellant.

―――――――――

Appeal from the Iowa District Court for Des Moines County,
The Honorable Emily Dean, Judge.

―――――――――

**AFFIRMED ON BOTH APPEALS**

―――――――――

Edward Harvey of Ed Harvey Law Office, Fairfield, attorney for
appellant father.

Kyler D. Massner of Cray Law Firm, P.L.C., Burlington, attorney for
appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, attorneys for appellee State.

Kimberly Auge of The Auge Law Firm, Fort Madison, attorney and
guardian ad litem for minor children.

―――――――――

Considered without oral argument
by Ahlers, P.J., and Buller and Sandy, JJ.
Opinion by Sandy, J.

**SANDY, Judge.**

A mother and father appeal the termination of their parental rights to their five children. The mother argues termination is not in the children's best interests and that she should have been granted a six-month extension to work towards reunification. The father separately appeals but fails to articulate an adequate argument to challenge the termination. We affirm.

## BACKGROUND FACTS AND PROCEDINGS

The mother and father have five children together. J.L. was born in 2018. C.L. and E.L. were both born in 2019. B.L. was born in 2021, and S.L. was born in 2023. All five children have varying forms of special physical and intellectual needs and require significant care from a caregiver. The children now reside in different counties across Iowa in their respective foster placements.

On June 10, 2024, C.L. and E.L. were adjudicated to be children in need of assistance (CINA) under Iowa Code section 232.96A(3)(b) and (14) (2024). The Iowa Department of Health and Human Services (HHS) had initial contact with C.L. and E.L. after reports that the parents were not changing the children's diapers consistently, resulting in open sores on the children's bodies. There were also reports that the mother had inflicted minor scratches on C.L.'s body.

J.L., B.L., and S.L. were adjudicated CINA on October 2, 2024, under section 232.96A(3)(b), (5), (14), and (15). HHS first encountered J.L., B.L., and S.L. following concerns the parents were not following through with medical appointments for the children.

The juvenile court ordered that all five children were to be removed from the care of the parents on August 16, 2024. Prior to the removal, the

parents fled Iowa to Tennessee with all five children to avoid court intervention. Tennessee law enforcement took the children into custody and returned them to HHS. The children have been removed from their parents' care since August 16, 2024.

The juvenile court ordered the parents to comply with a number of requirements relating to the children's health and wellbeing. Those requirements were established with the goal of helping the parents achieve minimal care standards for the children so that they could be returned to their parents' custody. These requirements included, but were not limited to, participating in all services requested by HHS, participating in Family Development & Self-Sufficiency programing, allowing HHS and other professional agencies into the home, and refraining from contacting foster parents or going to foster homes without permission from HHS. The HHS termination report and guardian ad litem report both outlined a failure to comply with most requirements ordered by the court.

HHS offered the parents an array of services to assist the mother and father in meeting the minimal care standards. The parents, however, failed to follow through with most of the services. The juvenile court found that the parents seemed incapable of making necessary changes due to their struggles with "working memory." The mother did obtain a mental health evaluation including IQ testing, which showed she had a full-scale IQ of 55.

On October 21, 2025, the juvenile court terminated both the mother and father's parental rights to C.L., E.L., J.L., B.L., and S.L. under Iowa Code section 232.116(1)(f) and (h). The mother and father separately appeal the termination.

# STANDARD OF REVIEW

We review termination of parental rights proceedings de novo. *In re J.V.*, 13 N.W.3d 595, 603 (Iowa 2024). We use a three-step process to determine whether a statutory ground has been established, if the termination is in the child's best interest, and if any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021).

# ANALYSIS

## I.    Father's Appeal.

The State claims the father waived any challenge on appeal by failing to make any substantive argument. The father cites Iowa Code section 232.104 as applicable authority, but his very limited argument does not acknowledge how the cited authority applies to the facts of the case or would warrant a reversal of the juvenile court's findings and ruling. We cannot determine whether the father is attempting to argue for an extension of time or to challenge HHS's reasonable efforts.

We agree with the State's argument. "Where a party has failed to present any substantive analysis or argument on an issue, the issue has been waived." *L.N.S. v. S.W.S.*, 854 N.W.2d 699, 703 (Iowa Ct. App. 2013). Although we recognize that termination proceedings are expedited, the father's argument is not substantiated in a way that we can properly review it. *See* Iowa R. App. P. 6.903(2)(a)(8); *see also In re C.B.*, No. 20-0048, 2020 WL 1049888, at *1 (Iowa Ct. App. Mar. 4, 2020). The father's arguments are thereby waived.

## II. Children's Best Interests.

The mother argues that termination is not in the children's best interests, and a six-month extension should have been granted

We apply the best-interest framework set out in Iowa Code section 232.116(2). We "give primary consideration to the [children's] safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). We consider the children's long-term and immediate interests. *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020). We must look at what the future may hold for the children if they are to be returned to their mother's care. *Id*. We do this by reviewing a parent's past performance, as it can be a helpful predictor of the quality of care the parent can provide. *Id*.

The mother argues that the children's behavior got worse as her visitation was reduced. She points to several examples in the record of the children misbehaving while in HHS custody.

We find termination is in the children's best interest. We are concerned that returning the children to their mother's custody could threaten their health, wellbeing, and safety. The mother has consistently failed to ensure the children receive medical care or attention. The guardian ad litem specifically noted numerous missed appointments by the parents for the medical needs of the children, lack of follow through of a referral for genetic testing for the children, failure to follow through with S.L.'s neurology, orthopedics, and physical-therapy appointments, and more. Meanwhile, although the children may continue to show behavioral issues, they now reside with foster caregivers who can get the children to doctor's appointments, care for their medical needs, and ensure a supportive and

nurturing environment. When looking back at the mother's prior performance as a parent to these five children, we see a record of inability to provide the care they need. Nothing reflects an ability to change or improve as a parent, and we find that termination of the mother's parental rights is in the children's best interests.

## III.  Six-Month Extension.

The mother asserts she should have been granted a six-month extension by the juvenile court to work towards reunification. To delay placement of children for an additional six months, Iowa Code section 232.104(2)(b) "requires the court to make a determination the need for removal will no longer exist at the end of the extension." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005); *see also* Iowa Code § 232.117(5) (permitting the court to deny termination and enter a permanency order under section 232.104).

The mother argues that at the time of the permanency hearing, she was overcoming her intellectual disabilities and making meaningful improvements towards reunification, thereby justifying a six-month extension under Iowa Code section 232.104(2)(b).

After reviewing the record, we believe the need for removal will continue to exist after a six-month extension. At the time of the termination hearing, the children had been removed from parental custody for over fourteen months. The mother largely refused to engage with the plethora of services that HHS offered her, and she failed to display she is capable of ensuring the children receive proper medical care needed for their array of specific needs. She showed little improvement from the time when proceedings began to the time of termination, which gives us little comfort

that the parenting situation would improve if she were given another six months.

These children should not be forced to wait for responsible parenting, and we will not further delay permanency when the mother has displayed an inability to adequately care for the children and has failed to progress through HHS's offered services, which are meant to improve the quality of care she can provide. "Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable." *In re T.J.O.*, 527 N.W.2d 417, 422 (Iowa Ct. App. 1994). A six-month extension is not warranted.

**AFFIRMED ON BOTH APPEALS.**